**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| AAARON KUCHARIK, ) | |
| ) | |
| Plaintiff, ) | CIVIL ACTION |
| v. ) | |
| ) | No. 20-2190-KHV |
| GARDEN CITY COMMUNITY ) | |
| COLLEGE, et al., ) | |
| ) | |
| Defendants. ) | |
| _____) | |

**MEMORANDUM AND ORDER**

On July 9, 2020, Aaron Kucharik filed an amended complaint against Garden City Community College ("GCCC"), Herbert J. Swender, Merilyn Douglass, Blake Wasinger, Jeff Crist, Steve Martinez and Teri Worf. Plaintiff alleges retaliation under Title IX, 20 U.S.C. § 1681 et seq., and violations of federal civil rights under the First and Fourteenth Amendments, U.S. Const. amends. I, XIV, and 42 U.S.C. § 1983. First Amended Complaint (Doc. #6). This matter is before the Court on defendants' Motion To Dismiss Plaintiff Kucharik's Claims (Doc. #21) filed September 4, 2020, pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, the Court overrules in part and sustains in part defendants' motion.

**Legal Standard**

In ruling on a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., the Court assumes as true all well-pleaded factual allegations and determines whether they plausibly give rise to an entitlement of relief. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim which is plausible—not merely conceivable—on its face. Id. at 679–80; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In determining whether a complaint states a plausible claim for relief, the Court draws on its

judicial experience and common sense.  Iqbal, 556 U.S. at 679.  The Court need not accept as true those allegations which state only legal conclusions.  See id.

Plaintiff bears the burden of framing his claim with enough factual matter to suggest that he is entitled to relief; it is not enough to make threadbare recitals of a cause of action accompanied by conclusory statements.  See Twombly, 550 U.S. at 556.  Plaintiff makes a facially plausible claim by pleading factual content from which the Court can reasonably infer that defendants are liable for the alleged misconduct.  Iqbal, 556 U.S. at 678.  Plaintiff must show more than a sheer possibility that defendants have acted unlawfully—it is not enough to plead facts that are "merely consistent with" defendants' liability.  Id. (quoting Twombly, 550 U.S. at 557).  A pleading which offers labels and conclusions, a formulaic recitation of the elements of a cause of action or naked assertions devoid of further factual enhancement will not stand.  Id.  Similarly, where the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the pleading has alleged—but has not "shown"—that the pleader is entitled to relief.  Id. at 679.  The degree of specificity necessary to establish plausibility and fair notice depends on context because what constitutes fair notice under Rule 8(a)(2), Fed. R. Civ. P., depends on the type of case.  Robbins v. Oklahoma, 519 F.3d 1242, 1248 (10th Cir. 2008).

When ruling on a Rule 12(b)(6) motion, the Court does not analyze potential evidence that the parties might produce or resolve factual disputes.  Jacobsen v. Deseret Book Co., 287 F.3d 936, 941 (10th Cir. 2002).  The Court accepts well-pleaded allegations as true and views them in the light most favorable to the non-moving party.  Sutton v. Utah State Sch. For Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999).

**Factual Background**

Plaintiff's amended complaint alleges the following:

Aaron Kucharik is a resident of Garden City, Kansas.  First Amended Complaint (Doc. #6), ¶¶ 12, 33.  He is an alumnus of GCCC, an active participant in GCCC programs and offerings and a season ticket holder for its athletic programs.  Id., ¶ 12.  He served as the Executive Secretary of the GCCC Endowment Association, a college-sanctioned fundraising organization, until he resigned on June 18, 2018.  Id.  He also worked as a funeral director for Price and Sons Funeral Home in Garden City.  Id., ¶¶ 32–33.

On March 19, 2018, Kucharik found two envelopes with no return address in the drop box at Price and Sons Funeral Home.  Id., ¶ 32.  Kucharik opened the envelopes and discovered that they contained documents and photographs regarding sexual harassment complaints against GCCC's cheer coach.  Id., ¶ 33.  On or about March 21, Kucharik presented the envelopes to GCCC authorities, including GCCC's Title IX[1] coordinator and HR department.  Id., ¶¶ 49–51.  The HR director took the envelopes and said she "would investigate it and address it as soon as possible."  Id., ¶ 51.  On or about March 23, plaintiff met with a detective at the Garden City Police Department about the envelopes.  Id., ¶ 78.  In the following weeks, GCCC did not follow up with plaintiff, which led him to believe that GCCC administrators were covering up and ignoring sexual harassment in their cheer program.  Id., ¶¶ 51–52.

On April 10, 2018, due to GCCC's lack of responsiveness, plaintiff decided to speak at the open comment section of the GCCC Board of Trustees ("Board") meeting.  Id., ¶¶ 53, 78.  He informed the Board that he had received the anonymous envelopes and had met with the detective.  Id.  He then publicly petitioned the Board "to address [the cheer squad's] Title IX issue, the problems of a sexually harassing culture at GCCC," and called on the Trustees to take effective

---

[1]  Title IX is a federal civil rights law passed as part of the Education Amendments of 1972 that prohibits discrimination based on sex in education programs or activities that receive federal financial assistance.  See 20 U.S.C. § 1681 et seq.

action.  Id., ¶ 65.  Plaintiff felt that the Board was unreceptive to his comments, and his suspicions were confirmed when the official meeting minutes did not contain his comments.  Id., ¶¶ 81, 108.  Later in the meeting, plaintiff witnessed the Board refuse to reopen the public comment portion of the meeting for a female cheer student who wanted to comment on the cheer squad sexual harassment situation.  Id., ¶¶ 74–75.

On April 11, 2018, plaintiff's boss at the funeral home was driving and received a phone call from Kim Reule, a host mom to GCCC student athletes.  Id., ¶¶ 85–86.  Over the phone, Reule warned that plaintiff's comments at the Board meeting could hurt the funeral home's business.  Id.  She thought that plaintiff should be fired because "he should not have been talking that way about the College and its leadership."  Id.  When he took the call, plaintiff also was in the car and overheard the conversation.  Id.  Plaintiff believes that President Swender "coached, instructed or primed" Reule to make this phone call to bully plaintiff.  Id., ¶ 89.  On April 13, at a GCCC Endowment Association fundraising event, Toni Douglass, another host mom to GCCC student athletes, heard about Reule's phone call and confronted her.  Id., ¶¶ 96–97.  Reule denied making the phone call.  Id., ¶ 98.

After this incident, feeling that he had no other options, plaintiff resigned from his Board membership on the GCCC Endowment Association.  Id., ¶¶ 124–25.  He continued to attend and speak out at Board meetings concerning Title IX issues and other matters of public concern.  Id.  In June of 2018, plaintiff and other community members initiated a recall petition drive to recall Trustees Douglass, Wasinger, Crist, Martinez and Worf, based in part on their lack of proper oversight associated with the cheer squad scandal.  Id., ¶ 140.  Plaintiff also called for the termination of President Swender and Athletic Director John Green because "they had not publicly resolved to take sexual harassment of cheer women seriously and instead had doubled down on

intimidation, threats and harassment." Id., ¶ 139.  In response, President Swender and the Trustees began to influence others to shut down plaintiff's criticism and the recall petition.  Id., ¶ 141. Specifically, on May 10, 2018, GCCC received a request under the Kansas Open Records Act ("KORA"), K.S.A. § 45-215 et seq., asking for the email records of more than 20 people, including plaintiff, who had Title IX issues at GCCC.  Id., ¶ 148.   Plaintiff believes that the KORA request was "fake" and that President Swender secretly submitted it as "a fishing expedition concerning individuals who might be termed 'critics' of the president."  Id., ¶ 149.

As the community took sides in the cheer squad scandal, plaintiff felt ostracized, lost friends and saw his funeral home business suffer.  Id., ¶¶ 124–30.  On one occasion in late November of 2018, Trustee Crist—who worked as a hospital chaplain and was responsible for notifying funeral homes for the next of kin—failed to connect Price and Sons Funeral Home to a decedent's family, which harmed business.  Id., ¶¶ 127–28.  Plaintiff noticed that by the end of 2018, after Trustee Crist retired from the hospital, referrals to Price and Sons Funeral Home "took a precipitous uptick."  Id., ¶¶ 129–30.

Meanwhile, the Board had hired an independent investigator to look into the cheer squad scandal and related Title IX allegations raised in the summer of 2018.  Id., ¶ 154.  The Board provided written and oral assurances of non-retaliation to individuals like plaintiff if they would cooperate and interview with the investigator.  Id., ¶ 157.  On June 27, 2018, plaintiff met with the independent investigator for more than two hours.  Id., ¶ 158.  At a Board meeting in January of 2019, the Board voted to adopt the independent investigator's report.  Id., ¶ 132.  Plaintiff perceived the report as a "sham" because it did not include information from his interview, such as the anonymous envelopes that he had received.  Id., ¶¶ 132, 158.  At the same meeting, GCCC Police Chief Dozier spoke about the cheer squad scandal during the public comment section and

"turned around and glared at and/or pointed to" plaintiff and others.  Id., ¶¶ 133–34.  During his comments, Chief Dozier had a backpack next to him that plaintiff believed contained a firearm and ammunition.  Id., ¶ 133.  The next day, feeling threatened, plaintiff reported Chief Dozier's behavior to the on-duty security officer.  Id., ¶¶ 134–35.  Over the next year, plaintiff on several occasions asked for a written follow-up on his report to security, only to eventually receive a response from Trustee Wasinger that "was not especially comforting."  Id., ¶ 136.  In February of 2019, the Board voted to close the public comment section of Board meetings "to squelch [plaintiff and others'] opportunities to address the Board in a public setting."  Id., ¶¶ 143, 201.

At two Board meetings in June of 2020, Trustees Wasinger and Douglass expressed frustration at lawsuits like plaintiff's because they increased GCCC's insurance rates and "wrongfully" harmed the college financially.  Id., ¶¶ 169–74.  Plaintiff believes that their intimidating comments created "an 'us' against 'them' civil rights based divisiveness."  Id., ¶ 175.  As a result, plaintiff has become the target of "a conspiratorial whisper campaign."  Id., ¶ 182.  For instance, three days after the comments by Wasinger and Douglass, a Garden City resident confronted plaintiff and echoed their accusations that plaintiff's lawsuit was harming GCCC.  Id., ¶ 176.  Plaintiff believes that community members now are blaming him for GCCC's financial woes and severe cutbacks, which is especially unfair because he complied with the Board's investigation.  Id., ¶ 182.

## Analysis

Plaintiff sues GCCC, GCCC's former President Swender and several GCCC Board of Trustees members alleging the following claims: (1) Title IX retaliation by GCCC in violation of 20 U.S.C. § 1681 et seq.; (2) First Amendment retaliation under the United States Constitution, U.S. Const. amends. I, XIV, and 42 U.S.C. § 1983 by individual defendants in their individual and

official capacities, and GCCC under Monell v. Department of Social Services, 436 U.S. 658 (1978); and (3) conspiracy to interfere with civil rights under 42 U.S.C. § 1985(2) by Trustees Wasinger and Douglass in their individual capacities.[2]  Defendants move to dismiss plaintiff's complaint in its entirety for failure to state a claim.  In the alternative, they move to dismiss as redundant plaintiff's official capacity claims against individual defendants and to dismiss under qualified immunity plaintiff's First Amendment retaliation and Section 1985(2) conspiracy claims against individual defendants.  See, e.g., N.E.L. v. Douglas Cty., Colo., 740 F. App'x 920, 928 (10th Cir. 2018) (detailing threshold to overcome qualified immunity).

Defendants generally argue that (1) plaintiff has failed to sufficiently plead facts to support his claims and (2) the documents that plaintiff "incorporated by reference" but did not include in his amended complaint demonstrate that plaintiff is misstating alleged facts.  Specifically, in his amended complaint, plaintiff "incorporates by reference" the Faculty Report issued on May 8, 2018 and public videos of the Board of Trustees' meetings.  First Amended Complaint (Doc. #6), ¶¶ 36, 159.  He did not include them in the amended complaint or attach them as exhibits.  On a motion to dismiss, the Court cannot legally consider extrinsic evidence outside the complaint.  See Fed. R. Civ. P. 12(d); see, e.g., GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997) (court must exclude outside material unless motion converted to one for summary judgment under Rule 56).  Further, while the Court may take judicial notice of matters in the public record such as the Board's public meeting videos, such notice is limited to the document's existence, not its accuracy.  More to the point, under Rule 8(a), Fed. R. Civ. P., a pleading that states a claim for relief must contain a "short and plain statement of the claim."

---

[2]  Plaintiff voluntarily dismissed without prejudice the Section 1985(3) claims for conspiracy, numbered in his amended complaint as Count IV.  Response By Plaintiff Aaron Kucharik (Doc. #47) at 8 n.3.

Evaluated against that standard, the purported "incorporations by reference" are surplusage, immaterial and impertinent. Accordingly, under Rule 12(f)(1), Fed. R. Civ. P., the Court strikes these references from plaintiff's amended complaint and does not consider them in deciding defendants' motion to dismiss.

The Court now will consider each claim in turn.

**I.      Title IX Retaliation**

Plaintiff alleges that GCCC violated his rights to be free from retaliation under Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681 et seq. Because reporting incidents of discrimination is integral to Title IX enforcement, Title IX protects from retaliation individuals who report discrimination. See Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 180–81 (2005). To state a claim for retaliation under Title IX, plaintiff must allege that (1) he engaged in protected activity; (2) GCCC knew of the protected activity; (3) GCCC took materially adverse school-related action against plaintiff; and (4) a causal connection occurred between the protected activity and the adverse action. Tackett v. Univ. of Kan., 234 F. Supp. 3d 1100, 1109 (D. Kan. 2017); C.T. v. Liberal Sch. Dist., 562 F. Supp. 2d 1324, 1336 (D. Kan. 2008).

GCCC's only challenge is that plaintiff does not plead sufficient facts that he is within the class of people which Title IX protects and GCCC therefore cannot be liable. Memorandum In Support Of Defendants' Motion To Dismiss (Doc. #32) at 7–10. GCCC asserts that plaintiff only pleads that he is a community supporter and booster, not a GCCC student or faculty member, and that he falls outside the Title IX protections for retaliation. Id.

The Court disagrees. In the context of Title IX retaliation, plaintiff is not required to plead that he is a GCCC student or faculty member. Title IX's enforcement scheme depends on individual reporting and accordingly protects from retaliation individuals who witness and report

discrimination. See Jackson, 544 U.S. at 180–81. Plaintiff sufficiently pleads that he served as Executive Secretary for the GCCC Endowment Association, a college-sanctioned fundraising organization. First Amended Complaint (Doc. #6), ¶ 12. Adult employees or school leaders like plaintiff "are often in the best position to vindicate the rights of their students because they are better able to identify discrimination and bring it to the attention of administrators." Jackson, 544 U.S. at 181. The Court therefore overrules defendants' motion to dismiss plaintiff's Title IX retaliation claims.

## II.     First Amendment Retaliation

Plaintiff alleges that GCCC and the individual defendants, in both their individual and official capacities, violated his First Amendment rights of speech, association and petition in a series of animus-based retaliatory acts which they carried out because he publicly reported Title IX concerns and other official misconduct. See U.S. Const. amends. I, XIV; 42 U.S.C. § 1983; First Amended Complaint (Doc. #6), ¶ 209. To state a claim for First Amendment retaliation, plaintiff must show that (1) he was engaged in constitutionally protected activity; (2) defendants' actions caused plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) plaintiff's exercise of constitutionally protected conduct substantially motivated defendants' adverse action. Van Deelen v. Johnson, 497 F.3d 1151, 1155–56 (10th Cir. 2007); Worrell v. Henry, 219 F.3d 1197, 1212–13 (10th Cir. 2001) (establishing the Worrell framework). As noted, plaintiff brings this claim against (1) the individual defendants in their individual and official capacities and (2) GCCC directly under Monell.

Plaintiff alleges the following constitutionally protected activities and retaliatory actions: (1) defendants retaliated against plaintiff to deter and punish him for speaking at Board meetings

by interfering with his friendships and forcing him off the GCCC Endowment Association Board; (2) because plaintiff spoke or raised issues to their displeasure, the Trustees failed to prevent President Swender from sending Reule to advocate for the termination of plaintiff's employment at the funeral home; (3) the Trustees refused to address plaintiff's concerns about GCCC's Title IX policy at Board meetings and denied him relief; (4) because plaintiff spoke or raised issues to their displeasure, the Trustees closed the open comment period at their Board meetings for an indeterminate time period and prevented plaintiff from petitioning the Board; and (5) in an attempt to harm plaintiff, hold him up to ridicule and blame him for GCCC's financial harm, Trustees Wasinger and Douglass spoke about lawsuits like plaintiff's in at least two Board meetings in June of 2020.  First Amended Complaint (Doc. #6), ¶ 209.

Defendants seek to dismiss these claims on the following grounds: (1) plaintiff did not sufficiently plead how defendants' actions caused him injury that would chill a person of ordinary firmness from continuing to engage in that activity; (2) the individual defendants are entitled to qualified immunity because the law is not clearly established in this district; (3) GCCC cannot be held liable under Monell because its employees committed no constitutional violations and the underlying Section 1983 claim therefore fails; and (4) plaintiff's official capacity claims against the individual defendants are redundant.  Memorandum In Support Of Defendants' Motion To Dismiss (Doc. #32) at 10–23.  The Court will address each of defendants' arguments in turn.

      **A.**    **First Amendment Retaliation Allegations**

Defendants first argue that plaintiff did not plead sufficient injuries to satisfy the Worrell framework.  Id. at 10–20; see Worrell, 219 F.3d at 1212.  Defendants acknowledge that plaintiff engaged in protected activity but argue that he does not satisfy Worrell's second prong because (1) extrinsic evidence proves that plaintiff's resignation from the GCCC Endowment Association

Board was voluntary and that Trustees Wasinger and Douglass' public comments were innocuous and (2) plaintiff did not provide sufficient facts to show how failing to act, closing a public comment period or discussing lawsuits at a public board meeting are materially adverse actions.

The Court disagrees. First, as discussed, the Court does not consider extrinsic evidence, such as plaintiff's public resignation letter or videos of Board meetings, and assumes the truth of the facts alleged in the amended complaint. Second, in the context of a motion to dismiss, plaintiff must put defendants on notice of his claims, not plead all of his evidence. See Fed. R. Civ. P. 8(a). Here, plaintiff sufficiently pleads facts illustrating how defendants' actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to report Title IX issues. Worrell, 219 F.3d at 1212. As to the first allegation, defendants sought to "deter and punish" plaintiff from speaking at Board meetings through intimidation tactics like pressuring the executive director of the Endowment Association to force plaintiff out. First Amended Complaint (Doc. #6), ¶¶ 124–25, 209. As to the second allegation, the Trustees allowed President Swender to orchestrate Reule's call to plaintiff's employer, which threatened plaintiff's livelihood. Id., ¶¶ 85–89, 209. As to the third allegation, the Trustees failed to address plaintiff's concerns about GCCC's Title IX policy, as seen when his comments were not included in official meeting minutes or the independent investigator's report. Id., ¶¶ 84, 108, 132, 158. As to the fourth allegation, plaintiff presented his Title IX concerns to the Board after exhausting other avenues such as GCCC's Title IX coordinator and HR Department, and the Trustees inappropriately closed the public comment section of their meetings to "squelch" his opportunity to address the Board in a public setting. Id., ¶¶ 49–51, 143, 201. As to the fifth allegation, Trustees Wasinger and Douglass blamed people like plaintiff for GCCC's economic hardships, which intimidated plaintiff, harmed

his reputation in the community and deterred him from speaking out. Id., ¶¶ 169–82. The Court therefore overrules defendants' motion to dismiss plaintiff's First Amendment retaliation claims.

### B. Qualified Immunity

In the alternative, defendants argue that the individual defendants (President Swender and Trustees Douglass, Wasinger, Crist, Martinez and Worf) are entitled to qualified immunity on plaintiff's First Amendment retaliation claims because "the law is not clearly established in this district" and defendants "are unaware of any caselaw that would put the Individual Defendants on notice that any of their actions discussed above violated clearly established law." Memorandum In Support Of Defendants' Motion To Dismiss (Doc. #32) at 22. To overcome an official's qualified immunity, plaintiff must demonstrate that (1) the official violated a statutory or constitutional right and (2) the law clearly establishes that right. See N.E.L., 740 F. App'x at 928. A right is clearly established when every reasonable official would understand that what he or she is doing violates that right. Id. at 928–29. Once plaintiff establishes an inference that defendants' conduct violated a clearly established constitutional right, a qualified immunity defense generally fails. See Cannon v. City & Cnty. of Denver, 998 F.2d 867, 876–77 (10th Cir. 1993).

Here, plaintiff has sufficiently pled that (1) he was engaged in protected First Amendment activities when he reported the Title IX violations and (2) the Trustees and President Swender subjected him to retaliatory treatment. First Amended Complaint (Doc. #6), ¶ 209. In the Tenth Circuit, the law is clearly established that harmful retaliation for exercising constitutionally protected rights under the First Amendment to the Constitution violates Section 1983. See Worrell, 219 F.3d at 1212; see also Nave v. Indep. Sch. Dist. No. 20 of LeFlore Cty., No. CIV-17-096-KEW, 2018 WL 6419296, at *9 (E.D. Okla. Dec. 6, 2018). In particular, plaintiff alleges that after he reported the Title IX concerns to the Board, the Trustees and President Swender forced

plaintiff off of the Endowment Association Board; urged Reule to call plaintiff's employer and threaten his job; scrubbed his comments from the Board's official meeting minutes and the independent investigator's report; shut down the public comment section of their meetings so he could no longer address the Board; and publicly blamed him for GCCC's financial woes. First Amended Complaint (Doc. #6), ¶¶ 84–89, 108, 124–25, 132, 143, 201, 209.  A reasonably competent public official would necessarily know that such retaliatory behavior violated plaintiff's First Amendment rights.  See, e.g., Worrell, 219 F.3d at 1212.  Thus, the individual defendants are not entitled to qualified immunity based on a lack of clear law in this district.  Defendants' motion to dismiss the First Amendment retaliation claims against the individual defendants is therefore overruled.

### C. GCCC's Liability Under Monell

Plaintiff alleges that under Monell, GCCC is liable for constitutional violations by GCCC employees under GCCC custom or policy.  First Amended Complaint (Doc. #6), ¶¶ 213–28; Monell, 436 U.S. at 694.  Local governments or municipalities, including GCCC, can be held liable for their employees' actions if they were taken pursuant to GCCC's "official policy."  Pembaur v. City of Cincinnati, 475 U.S. 469, 479 (1986); Monell, 436 U.S. at 694.  To allege liability under Monell and its progeny, plaintiff must allege (1) a constitutional violation by a municipal employee, (2) the existence of a municipal custom or policy and (3) a direct causal link between the custom or policy and the violation alleged.  See Monell, 436 U.S. at 694; Hinton v. City of Elwood, Kan., 997 F.2d 774, 782 (10th Cir. 1993).

Defendants argue that plaintiff "does not allege a single act taken by any employee under any GCCC policy that violated any alleged right of the Plaintiff" and that Monell liability "appears to be pleaded as factual support for the alleged First Amendment violations." Memorandum In

Support Of Defendants' Motion To Dismiss (Doc. #32) at 23. Defendants contend that because the underlying employees committed no constitutional violations, plaintiff cannot hold GCCC liable under Monell. Id.

As stated above, plaintiff sufficiently alleges that GCCC's employees—President Swender and the Trustees—violated plaintiff's constitutional rights when they retaliated against him for reporting Title IX issues. The retaliation included employing intimidation tactics such as threatening plaintiff's livelihood, silencing him at Board meetings and publicly blaming him for GCCC's financial woes. See, e.g., First Amended Complaint (Doc. #6), ¶¶ 84–89, 108, 124–25, 132, 143, 201, 209. Further, plaintiff alleges that these retaliatory actions were based on GCCC's Title IX policy or custom to silence critics; to "encourage" or "turn[] a blind eye" to misbehavior; and to not "adequately supervise, discipline, and train its officials with respect to Title IX and constitutional protections." Id., ¶¶ 224–25. Because plaintiff has alleged that the retaliatory conduct of President Swender and the Trustees was taken pursuant to GCCC's Title IX policy, GCCC may be subject to municipal liability if the underlying conduct violated the Constitution. The First Amendment retaliation claim against GCCC therefore survives under Monell.

### D. Official Capacity Claims

Plaintiff asserts his First Amendment retaliation claims against President Swender and the Trustees (Douglass, Wasinger, Crist, Martinez and Worf) both in their individual and official capacities. First Amended Complaint (Doc. #6), ¶ 209. Defendants argue that the claims against President Swender and the Trustees in their official capacities are redundant in view of the claim against GCCC. Memorandum In Support Of Defendants' Motion To Dismiss (Doc. #32) at 7. In response, plaintiff contends that the official capacity claims are not redundant because their scope of recoverable damages is broader than the scope of recoverable damages against GCCC—namely,

punitive damages are not permitted in suits against municipalities but are available against individuals sued in their official capacities. Response By Plaintiff Aaron Kucharik (Doc. #47) at 44. Plaintiff relies on Youren v. Tintic School District, 343 F.3d 1296 (10th Cir. 2003), where the Tenth Circuit found sufficient evidence to warrant a trial on punitive damages against an individual defendant in her official capacity.[3]

Courts in this district have routinely dismissed official capacity claims as redundant when the local government or municipality is also a defendant, and have rejected the argument that official capacity claims should not be dismissed when plaintiff seeks punitive damages. See Thouvenell v. City of Pittsburg, Kan., No. 2:18-CV-2113-JAR-KGG, 2018 WL 3068199, at *3 (D. Kan. June 21, 2018); Quintero v. City of Wichita, No. 15-1326-EFM-GEB, 2016 WL 5871883, at *1 (D. Kan. Oct. 7, 2016) (plaintiff had avenue for punitive damages through individual capacity claim); Smith v. Stuteville, No. 14-2197-JWL, 2014 WL 3557641, at *4 n.1 (D. Kan. July 18, 2014) (individuals sued in official capacities immune from punitive damages). The Tenth Circuit acknowledges that Youren is "an anomalous outlier" and recognizes that courts within the Tenth Circuit ignore Youren when dismissing punitive damages claims in official capacity under Section 1983 suits. See, e.g., Cross Continent Dev., LLC v. Town of Akron, Colo., 548 Fed. Appx. 524, 531 (10th Cir. 2013); Thouvenell, 2018 WL 3068199, at *3. Even if Youren continues to be good law, plaintiff's case is distinguishable because unlike in Youren, plaintiff alleges individual capacity claims against all of the individually named defendants.

---

[3] The Court notes that in Youren, the question was not whether the claims were duplicative, but whether the official capacity damages amounted to "impermissible double recovery." 343 F.3d at 1306. The defendant also was sued only in her official capacity, not as an individual. Id.

Because plaintiff brings his First Amendment retaliation claims against both GCCC and the individual defendants in their official capacities, plaintiff's official capacity claims against Swender, Douglass, Wasinger, Crist, Martinez and Worf are duplicative. The Court therefore dismisses the official capacity claims against these defendants.

### III.    Conspiracy To Interfere With Civil Rights Under 42 U.S.C. § 1985(2)

Plaintiff alleges that in violation of 42 U.S.C. § 1985(2), Trustees Wasinger and Douglass conspired to speak at two Board meetings on June 9 and June 25, 2020. Plaintiff alleges that at these meetings, Wasinger and Douglass "publicly blamed civil rights advocates within the last two years as the reason for a reported $500,000 plus jump in insurance premium/deductible costs for the College's errors and omissions liability coverages," and injured and intimidated plaintiff by sharing these comments with a wide audience. First Amended Complaint (Doc. #6), ¶¶ 169, 250–58. Defendants argue that based on the publicly available videos of Board meetings, Wasinger and Douglass did not appear to conspire and their comments cannot be considered force, intimidation or threat. Memorandum In Support Of Defendants' Motion To Dismiss (Doc. #32) at 23–27. In the alternative, defendants argue that Wasinger and Douglass are entitled to qualified immunity. Id. at 29–30. The Court considers each argument in turn.

####    A.    Section 1985(2)

The first clause of Section 1985(2) contains a deterrence provision, which "concerns intimidating parties, witnesses, or jurors in court so that they will not attend court or testify." King v. Knoll, 399 F. Supp. 2d 1169, 1179 n.57 (D. Kan. 2005). The "deterrence" provision of 42 U.S.C. § 1985(2) provides that "[i]f two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully

. . . the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators." 42 U.S.C. § 1985(2). The elements of a deterrence claim under Section 1985(2) are (1) a conspiracy, (2) intent to deter testimony by force or intimidation and (3) injury to plaintiff. Brever v. Rockwell Int'l Corp., 40 F.3d 1119, 1126 (10th Cir. 1994).

Defendants challenge plaintiff's allegations regarding the first two elements: (1) conspiracy and (2) intent to deter testimony by force or intimidation. A conspiracy "requires the combination of two or more persons acting in concert." Abercrombie v. City of Catoosa, 896 F.2d 1228, 1230 (10th Cir. 1990). A plaintiff must allege, "either by direct or circumstantial evidence, a meeting of the minds or agreement among the defendants." Id. at 1231. The conspiracy "must be one that has the requisite statutory purpose," namely to deter a party or witness from attending or testifying freely, fully and truthfully. Brown v. Chaffee, 612 F.2d 497, 502 (10th Cir. 1979). While more than mere conclusory allegations are required to state a valid claim, "the nature of conspiracies often makes it impossible to provide details at the pleading stage and . . . the pleader should be allowed to resort to the discovery process and not be subject to dismissal of his complaint." Brever, 40 F.3d at 1126.

To satisfy the conspiracy element, plaintiff identifies Wasinger and Douglass and claims that they engaged "in exchanges that appear[ed] preplanned or with prepared notes" that disparaged lawsuits like plaintiff's. First Amended Complaint (Doc. #6), ¶ 252. To satisfy the deterrence element, plaintiff alleges that Wasinger and Douglass linked GCCC's increasing insurance costs and significant reductions in GCCC faculty, staff and student offerings to lawsuits like plaintiff's. Plaintiff claims that their actions deterred plaintiff by intimidation and threat from attending or testifying freely, fully and truthfully in federal court because their comments (1)

implied that people involved in lawsuits like plaintiff were "bad people" and "essentially pariahs in the Garden City community"; (2) created "an 'us' against 'them' civil rights based divisiveness" in the community that intimidated plaintiff; and (3) threatened and harmed plaintiff's economic standing and reputation in the community.  Id., ¶¶ 175–76, 182, 250–58.

Defendants argue that the publicly available videos of Board meetings prove that Wasinger and Douglass (1) did not have a meeting of the minds because Douglass stated in the video that she was sharing her "personal feelings" and (2) did not make comments that could be considered "force, intimidation, or threat" under Section 1985(2) and instead only made vague comments about the economic impact of lawsuits on GCCC.  Memorandum In Support Of Defendants' Motion To Dismiss (Doc. #32) at 26–27.  As stated, the Court cannot consider extrinsic evidence on a motion to dismiss.  See Fed. R. Civ. P. 12(d); see, e.g., GFF Corp., 130 F.3d at 1384.  The Court also assumes the truth of plaintiff's allegations regarding the Board meetings.  Assuming as true plaintiff's well-pleaded factual allegations, plaintiff sufficiently pleads facts which create an inference that Wasinger and Douglass (1) had a meeting of the minds as demonstrated by their prepared notes and (2) intended to deter plaintiff from testifying about the Title IX allegations by bringing up plaintiff's lawsuit to stigmatize and discredit him.  First Amended Complaint (Doc. #6), ¶¶ 175–76, 182, 250–58.  The Court overrules defendants' motion to dismiss plaintiff's Section 1985(2) conspiracy claims.

### B.     Qualified Immunity

In the alternative, defendants argue that Wasinger and Douglass are entitled to qualified immunity on plaintiff's Section 1985(2) conspiracy claim because defendants "are unaware of any caselaw indicating that comments about the economic impact of a lawsuit will invoke liability under § 1985(2)."  Memorandum In Support Of Defendants' Motion To Dismiss (Doc. #32) at 29–

30. To overcome an official's qualified immunity, plaintiff must demonstrate that (1) the official violated a statutory or constitutional right and (2) the law clearly establishes that right. N.E.L., 740 F. App'x at 928. A right is clearly established when every reasonable official would understand that what he or she is doing violates that right. Id. at 928–29.

For the first factor, defendants argue that based on the publicly available Board meetings videos, Wasinger and Douglass' comments about insurance premiums and the economic costs of litigation "are a far cry from abusive and threatening comments" and "were neither abusive nor threatening as a matter of law." Defendants' Reply Memorandum (Doc. #52) at 18. As discussed above, the Court disregards such extrinsic evidence and accepts plaintiff's allegations that in violation of 42 U.S.C. § 1985(2), Wasinger and Douglass conspired to speak at two Board meetings in June of 2020 to intimidate plaintiff and deter him from testifying about the Title IX allegations. First Amended Complaint (Doc. #6), ¶¶ 175–76, 182, 250–58.

For the second factor, defendants do not dispute plaintiff's argument that the law clearly establishes the right to testify truthfully at trial—they instead again argue that the publicly available Board meetings videos prove that "no reasonable [Board] member would have thought that the specific comments made by Wasinger and Douglass [about the economic impact of lawsuits] were unlawful," i.e., threatening and intimidating under Section 1985(2). Defendants' Reply Memorandum (Doc. #52) at 18.

The First Amendment clearly establishes the right to testify truthfully at trial, especially where plaintiff has brought forth matters of public concern like a Title IX allegation. See, e.g., Patrick v. Miller, 953 F.2d 1240, 1247–48 (10th Cir. 1992); Melton v. City of Okla. City, 879 F.2d 706, 714 (10th Cir.1989). As discussed, the Court will not consider the Board meetings videos in this motion to dismiss, and plaintiff pleads sufficient facts to give rise to the inference that

-20-

Wasinger and Douglass conspired to deter him from testifying by threatening and intimidating him at the public meetings, which harmed his economic standing and reputation in the community. First Amended Complaint (Doc. #6), ¶¶ 175–76, 182, 250–58.  Wasinger and Douglass are not entitled to qualified immunity, and defendants' motion to dismiss the Section 1985(2) conspiracy claim is overruled.

**IT IS THEREFORE ORDERED** that defendants' Motion To Dismiss Plaintiff Kucharik's Claims (Doc. #21) filed September 4, 2020 should be and hereby is **SUSTAINED in part**.  The Court dismisses as redundant plaintiff's First Amendment retaliation claim against President Herbert Swender and Trustees Merilyn Douglass, Blake Wasinger, Jeff Crist, Steve Martinez and Teri Wolf in their official capacities.  Defendants' motion is otherwise **OVERRULED**.

Dated this May 6th, 2021 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge